The District Court's orders suppressing identity evidence of the defendant in this case are contrary to rulings of the Supreme Court and this circuit. The Supreme Court and this circuit have repeatedly held that a defendant may not challenge either the presence of his body in the courtroom or the introduction of identification evidence merely because he was subject to an unlawful arrest. This court has repeatedly applied those principles in the context of the prosecution of the illegal aliens to hold that the defendant's identity may not be suppressed. And in particular, in United States v. Parga-Rosas, the court held that a post-indictment fingerprinting does not implicate the Fourth Amendment and that those post-indictments Can I read you the language from Parga-Rosas? It's very short to the end. Because the fingerprints were not taken for investigatory purposes, but for the sole purpose of proving Parga-Rosas' identity, the Fourth Amendment is not implicated. The question here is whether they were taken for investigatory purposes. There's two different sets of fingerprints we're talking about, Your Honor. There's the fingerprints taken at the time of the arrest. Yeah. And there's the fingerprints that I sought to obtain by a motion to compel a fingerprint exemption. Oh, I see. So you're – but are you questioning, then – let's talk about the fingerprints that were first taken. Are those – in your view, those fingerprints were also properly taken, or were those investigatory fingerprints? In my view, they were also properly taken because they were not investigatory fingerprints. Even if they were investigatory, I think under Guzman-Bruno, it doesn't make any difference. Okay. Can I talk about the first fingerprints, then? First off, I'm trying to figure out what we're supposed to do with the district judge's finding that this was a race-based stop – a race-based – excuse me, not a stop, but a race-based arrest. Is that a factual finding? Obviously, the historical facts are fact-based, Your Honor, but the – the – Gonzalez-Rivera, I believe, is the case that sets up the race-based arrest standard. It holds that whether the facts meet that standard is a de novo question. Now, that – one of my arguments is, of course, that even looking at the historical facts acknowledged by the district court, there's no basis for concluding that this was a race-based stop. What if the district judge says, I've listened to the testimony. I conclude that the subjective motivation of the officer, that's to say, this is what was in the officer's mind, was that this – he stopped because of race. Is that a fact-based thing to which we should defer, or is that not a fact-based thing to which we should defer? Whether it's race-based is not a fact – is not ultimately a factual determination. Yeah, but I'm asking a slightly different question. If the judge decides this is what the officer – this is what was in the officer's head, this is what motivated the officer, is that similarly not a factual determination? I would have two – two responses. First, subjective inquiry isn't even supposed to take place in the Fourth Amendment context, but let me address specifically your question. But that – that may be your final answer, that's to say, motivation has no place here. Right. That is one of my answers. I don't think on the facts of this case that the court can just look at the court's statement that this is race-based. And maybe that's an abusive discretion standard, because there's too much else here justifying what the officer did. And these are facts that the court acknowledged. It's beyond dispute that the defendant was identified as a drug dealer. It's beyond dispute that he was in the company of a prior customer of his. It's beyond dispute that he lied about his age, his identity, and the fact that he was a prior drug dealer. Those are all the things that the officer testified to led him to the conclusion that he had probable cause. Now, he may have been wrong about that. Yeah. Let me tell you where I have – where my problem comes with your case and where my problems don't come. I have no problem with the stop. Wren says, you know, you may have something else in mind, but if there's a traffic violation, you can stop. I have no trouble with the questioning. But where my problem comes is, after he's gotten the answers to the questions, and the characterization that you've given to the answers is, I think, within the boundaries of fair play, but it is a sort of a characterization. She testifies, yes, once some time ago she purchased drugs from him. She testifies that she's an occasional heroin user, now does methadone. At the time that he puts Mr. Hernandez under arrest, he's not found a syringe. I think he finds the syringe later. He finds no drugs on the defendant. He finds – so all we have is testimony from the moment he's about to let go that at one time in the past he did sell drugs. He arrests him for sale of drugs or attempted sale of drugs. But there are no drugs there. There's no testimony from anybody that he's now doing it. But in your view, that arrest is nonetheless sufficiently justified. Well, the court has referenced only those facts which are not in dispute. There were additional facts that the officer relied on. Notably, he testified that another officer had said he saw the defendant engaging in a swallowing motion. I haven't relied on that here because it's a factor that the district court discounted. The district court, as a matter of fact, put that to one side, saying that was never in the report and we don't have any testimony from the officer who said that. Well, all we have is this officer saying he heard the officer say that. That's correct. The court discounted it. The court has very accurately summarized what might be seen as the shortcoming of the probable cause determination of the agent at that time. But that's an entirely separate question from whether this was a race-based arrest. Yes, I understand that. And, indeed, I think the factors that the court has listed, while they may not rise to the level of probable cause, certainly overcome a burden as set forth in the race-based cases of showing that the arrest was for – I think what those cases say is that when the arrest was solely because of the defendant's race, then there may be a race-based arrest. But I just don't think you can reach that standard. I'm not fully made up my mind. And, obviously, I can't speak for my colleagues because our custom is we really don't discuss these cases until after argument and conference. So I'm clearly not speaking for them. And I'm not sure even quite where I am on this. But my tentative inclination is to agree with you that this is not – there's not enough here to find that it's race-based. But my tentative inclination is to find that there wasn't sufficient cause for the arrest, which is quite a different proposition from finding that it's race-based. I agree. Even if the court concludes that there wasn't sufficient probable cause for the arrest, I still think – then, clearly, the Ninth Circuit cases, Guzman, Bruno, among others, hold that the post-arrest fingerprints are – should not be suppressed because the defendant's identity and evidence of his identity can't be suppressed. Now, again, we have two sets of fingerprints. I'm not sure which one we're talking about. Yes, there was no probable cause for the arrest. The first fingerprints, I think, were investigatory. Would you agree with that, if there's no probable cause for the arrest? No, I wouldn't agree with that, Your Honor. Why not? Because they – I don't think that they – Because they have no evidence of the crime for which he's being arrested. At that point, he's just trying to figure out, okay, what do I have here? Sounds like an investigation. What do I have or who do I have? That's the problem I have with the record. That's another way of saying the same thing. Well, I'm not sure that it is because my concern is the officer testified that he thought that Mr. Hernandez had lied to him about what his true name was. And so I want to explore with you for a minute whether the booking photograph or fingerprints that were taken were also taken for the purpose of trying to establish with certainty who it was that they had arrested. Of course they were, and that's exactly what the officer said. If that's the case, then can they be taken for both purposes? And how do we establish his true identity, but also because the officer testified that he thought this guy must be wanted for something based on the way he behaved in the field, can't we also conclude that the prints were taken for an investigatory purpose to find out whether he was wanted for some other crime? Well, I think the term fingerprints for an investigatory purpose derives from Davis, which – and that's a circumstance in which a defendant was picked up and fingerprinted solely for investigative purposes. And that brings us back to the mere shortfall of probable cause doesn't convert any ensuing fingerprinting to an investigatory fingerprinting. The officer could have had a legitimate belief. It may, on subsequent analysis, fall short of probable cause, but that doesn't mean that every ensuing fingerprinting becomes an investigatory fingerprinting. Well, I guess we have to figure out what do we mean by investigatory fingerprinting. Let's assume, although I think you're contesting it, but let's assume for the purpose of the questions that the arrest was without probable cause, and therefore an improper arrest. So the officer's not supposed to be holding him. During that time, while he's not supposed to be holding him, he asks – he compels fingerprints. Now, in ordinary language, he's investigating. That's to say, he's trying to figure out, in my terms, what he has, in Judge Tallman's terms, who he has. He's trying to figure out both things. He's investigating. What else is he doing? Well, you're assuming that the officer was acting with knowledge that he didn't have probable cause. I don't think a routine booking fingerprint, and this is what the case – Whether he knows he has probable cause or doesn't know he has probable cause, I don't know that that's relevant. That is to say, he either does or he does not. I'm assuming, and we're assuming for the purpose of the question, that he does not. And why is he taking these fingerprints? Well, because he wants to find things out. He wants to find out who is this guy. No, he's taking the fingerprints because he's arrested him and because the routine processing following an arrest involves fingerprinting. But at that time, when he's taking those things, he has nothing on this guy. Well, that's not what he thinks at the time. But the district court finds that he has nothing on this guy. That's true, but I don't – And the district judge takes it even further and says, this is a race-based arrest. I'm not sure I'm quite willing to go that far. But the district judge says, he knows he's got nothing. He knows he's got an Hispanic. That's what he knows. Doesn't he have to go, though? The district judge has got to declare that this is an egregious, race-based violation in order to get around our case law that says, even if there was no probable cause to make the arrest and all other evidence or fruits of the arrest would normally be suppressed, the one thing that does not get suppressed is evidence of the identity of the person, which in this case comes from his fingerprints. That's the only way we're able to determine who he is. That's correct. So how do you – I think – How do you deal with Davis now? The officer arresting any defendant has – and society has a legitimate and a compelling need to take the defendant's fingerprints at that point. Not because they're investigating possible other crimes, but because it is a routine consequence of arresting somebody. And that's the distinction between what happened in Davis. Those people were picked up just for the purpose of getting their fingerprints. They weren't arrested. They were scooped up and fingerprinted. That's far different from the legitimate and routine taking of fingerprints in the post-arrest context. What do you mean they weren't arrested in Davis? They were picked up involuntarily and their fingerprints were taken. That sounds like an arrest to me. Of course, Your Honor. The – It might have been an improper arrest, but that's what we got here. At least under the premise. I understand you're not conceding an improper arrest. The law enforcement officers in Davis didn't purport to be arresting or to be acting with probable cause in that case. But if that's the analysis, if you say the magic words, I'm arresting you, even though you have no probable cause to arrest and it's an improper arrest, that makes the fingerprinting proper. Whereas if you just pick them up and say, I'm not arresting you, but please stay in the back of this car until I take your fingerprints, that's different? You have exactly identified the question, what should the standard be for applying Davis? And I believe the standard should be, Davis applies only when the sole purpose for taking the fingerprints is for investigatory purposes, not when there is an arrest which the officer premises on probable cause even if that probable cause showing is later found to be insufficient. And here, once again, there was enough to support what the officer did that it shouldn't cause the application of an extraordinary remedy like Davis. But I would like to turn to the second set of fingerprints. Well, do that because, and let's see how essential what we've been talking about is to what the court ultimately does here. Let's assume the three appeals. Correct. The suppression, criminal prosecution, supervised release, and then the exemplar for INS purposes. Suppose that we say this first suppression motion was correct, purely investigation, it's correct. What do we do? What's our judgment on the three appeals? Well, that finding would uphold the first suppression order case. To that extent, but the case hasn't been tried yet. That's correct. And if you have a good fingerprint, then you don't care about that suppression, which of course you've got that to introduce at your trial. You're absolutely right. So if all we did was vacate and send it back, and you can use a fingerprint, either supervised release or an exemplar, it doesn't matter to you. Except the district court told me I couldn't get the exemplar. Well, I understand. We'd have to reverse that. Right.  It would make me happy indeed, Your Honor. Because this first part really doesn't matter. It really doesn't matter if I get the subsequent fingerprints and if I am permitted to introduce the defendant's immigration file and prior records. Well, that's entirely different matter. There's been no finding on that. No reason why you couldn't. Well, the finding is obtained, right? Under the current district court order, he's essentially said, you can never take fingerprints from this man. That's correct. Because it all flows from the initial illegal arrest. That's correct. We have lots of branches. This is quite an interesting case. It's almost like a law school exam because of the very little things that might happen. Let me pursue Judge Readley's line of questioning. Let's assume, and I understand you're not conceding. Let's assume that the fingerprints are purely investigatory. So the first set of fingerprints taken has to be suppressed. Right. Let's assume further that only because he got those fingerprints the first time around, the investigatory fingerprints, that got him to his immigration file information. Yes. Because I think there's pretty direct chain. If he didn't have those fingerprints, he didn't get that stuff. That's correct. The foundation for the criminal trial is the immigration records that he obtained. That's correct. I'm willing to go right along with you. I think if someone is properly at trial, a fingerprint exemplar can be compelled. But what if the only way you get him to trial is by the use of these immigration documents which were obtained through the fingerprints that he shouldn't have taken? The Ninth Circuit has addressed that exact issue, Your Honor. In what case? Hunzalapa, and I believe Orozco is the other one. And what the court there held was that the mere fact that an illegal arrest leads the authorities to the pre-existing immigration files does not call for suppression of those pre-existing files. Now, I'm sorry. I need to read those cases. Are they cited in your briefs? I've read a lot of cases in connection with this deal, but I've not read those. They are cited, Your Honor. Okay. Sometimes there are just too many cases out there for me to read beforehand. I suffer from the same problems so my fingers are poised. Hunzalapa is at 575 F. 2nd, 735. I'm sorry, 575 F. 2nd, 735. 735. Hunzalapa. That's correct. Okay. And I have page 738 of the opinion where it says, the mere fact that the Fourth Amendment illegality directs attention to a particular suspect does not require exclusion of evidence subsequently unearthed from independent sources. And the specific issue addressed there is whether... The word sounds like independent. We can read the case. What's the second case? Well, if I could finish with that. Oh, I'm sorry. It specifically says, no sanction shall be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to the official file. The file can be used so far as relevant. Okay. That sounds relevant. And your other case is? It is, I believe that case is cited later in... It's okay. Take your time. It's my lack of reading that's responsible for this delay. I believe the case, Your Honor, and I'm doing this on recollection, is Orozco Rico. How do I spell all those line names? O-R-O-Z-C-O dash Rico, 589 F2nd 433. 589 F2nd, and what was the last number? 433. 433. Cited in my brief. Okay. Okay, good. Thank you. Now I will make sure to read those cases. So your view is that even though it might well be true that taking those fingerprints led to the immigration file, under our case law, that doesn't matter. That's correct. And it also doesn't matter that the taking of those fingerprints lead to the subsequent obtaining of an exemplar. The same authority applies, and I think that takes us back. Well, I think you got there, or I get you there by another way. That is to say, if the obtaining of the immigration file is permitted, and therefore we're properly in trial, the exemplar can be compelled. Yes, as long as the body is present in court, the physical characteristics of the body are appropriately brought before the trier of the fact, and that means taking a fingerprint exemplar. I'm with you. I think the court tried to craft an exemption to that rather simple principle based on its race-based finding, but I do not think that even if this was a race-based arrest, and obviously I don't concede that it is, that such an exception can be crafted. Thank you. And we'll give you a minute or so in response. We'll use up all your time, but we'll give you some back. Good morning, Your Honors. Thank you very much. My name is Paul Papik. I represent Mr. Ortiz-Hernandez. As the court noted, this is a complicated case with many levels. It seemed that the court was not inclined to discuss the probable cause finding, and I'll skip over that except to mention a comment the judge made in the previous argument that would your case be a whole lot stronger if this happened at noon rather than at 4 a.m.? This happened at noon. This happened in a very crowded district of southeast Portland in a filled McDonald's. Everything about this case appeared to be innocent behavior. Mr. Papik, I'll give you the win on probable cause. All right. None. No probable cause. No probable cause. But before you sit down, No, I'm not. let's go to my next level of concern, which is, where does the district court find support for the suppression of the defendant's identity when this is a continuing criminal offense? Every minute that your client remains in the United States, he's continuing to commit the crime of illegal reentry. That he's in court. That he's in court. I mean, I guess what bothers me about what the district judge tried to do here, it was almost tantamount to saying to the government, I find that there was no probable cause to establish the arrest, and he gets a good, a safe conduct pass, you've got to put him on the next INS bus to the border, and nobody from the sovereign can touch him, even though every minute he's riding the bus to the border, he's continuing to commit a federal criminal violation. And he's saying to the government, you can't investigate and prosecute that. Are you sure he doesn't get a safe conduct pass to stay here? Well, maybe he gets a safe conduct pass to stay here. That's really, I think, ultimately, what is of concern if we uphold what the district court did. Well, I suspect that's not an uncommon result in application of the exclusionary rule generally. I can't think of any other, I mean, we certainly suppress evidence that makes it impossible for the government to prosecute a historical crime. What makes this one different is that it's a continuing crime. Well, the issue, as I understand it, Your Honor, first of all, is there has never been a suppression of the body in this case, nor is the body of Mr. Ortiz-Hernandez currently suppressed. He's in jail. But he's suppressing any ability to prove who he is. That's not true. He's suppressing tainted evidence if the government has other independent source evidence. And those are your cases of Guzman, Bruno and Parga-Rosas. In both of those cases, if you recall, the officers approached the defendant and before any illegality asked either what is your name? And Mr. Guzman-Bruno said Mr. Guzman-Bruno or Mr. Parga-Rosas handed him a green card saying I'm Mr. Parga-Rosas. And the judge  said the subsequent arrest and the subsequent search of those gentlemen were illegal. But the initial identification was from an independent source and so therefore it was appropriate to gather further information about the identity because they had established that independent source. But there would be nothing improper let's forget about the illegal arrest for a minute there would be nothing improper in issuing a grand jury subpoena or a court order requiring Mr. Hernandez to come into the courthouse and provide a set of fingerprints. Agreed? Under any other circumstances? Under other circumstances. That would be perfectly appropriate if an INS investigator suspected that he might be in the United States illegally without probable cause or reasonable suspicion he could get a court order saying provide us with fingerprints. Yes generally that's correct. And what the district court is doing here is saying from this point on into the future I'm not going to let the government do that. You cannot get a set of fingerprints from this man. No. It's suppressed. That may be the practical effect at this point I'm not sure that's the court's broader ruling because in the government's request for a fingerprint exemplar they provided the court with no information that they had an independent source to establish who this person was and so the fingerprint exemplar was simply a way to avoid the suppression ruling. I don't see how you could ever avoid that. Well easily I mean very frequently we have agents INS agents police officers who make arrests and they say well I know him he lived here before that's Mr. Ortiz Hernandez well if they brought a person in the court to say I can identify him I know who he is I think they would have arguable evidence for independent source by which they could now present to Judge Redden a request for a handwriting exemplar and say this isn't tainted by what we did in the improper race based or not race based search and grant that exemplar the problem here is the government hasn't done that and you're correct in assuming perhaps they can't and perhaps they are going to be foreclosed from any prosecution but it's because of the taint of the initial stop and directing it forward to their subsequent activity all they're trying to do is avoid the results of the suppression motion to gather evidence to prosecute and is it simply an extension of Wong Sun that says that can't be done and Wong Sun cites fingerprint cases as part of the exclusionary rule the problem is that it's swallowing the rule that the court never loses jurisdiction over the body of the person the question is who is this person and how do we know who he is and the only two ways I know to do it are either through fingerprints or through DNA I mean you say somebody could come in and say I know that's Mr. Ortiz Hernandez but I'm not sure that would be sufficient because what I mean first of all we're dealing with a legal re-entry prosecution this did begin as an alleged drug charge where identity may be insignificant if they wanted to charge John Doe but on the illegal re-entry charge if somebody came into court and said I know this to be Jose Ortiz Hernandez and I know it from looking at him standing here and I know it from before the taint it seems to me the government can make application for the immigration file to test picture versus picture or thumbprint versus thumbprint then do further testing but they can't use the information gathered as part of the illegal I believe race-based arrest that taints that first identification where the officer sitting in his office is really trolling around trying to find out is there something I can charge this guy with because I sure don't have much here trolling around trying to find out is there something I can charge him with or trolling around to find out who is this guy I don't believe the name he gave me he lied to me the court found and I think he had a factual basis for finding something that the officer indicated he believed although we don't know why that he was wanted for something and he was looking for something to charge him with he called the INS to investigate because hey he's Hispanic maybe he's here illegally and he sought for his fingerprints to see whether they would come back either with a warrant attached or his identity would be something different but you have to know his identity in order to find out whether or not he was wanted for anything that's the problem well I think the case law is pretty clear that when we talk about this issue of the body never being suppressed we're talking about a jurisdictional matter and the case law says that if you go out and you kidnap somebody totally free from arrest you can try them the bodies here try them but it doesn't mean you can go and kidnap somebody bring them back in a court and say now let's prove our case let's get his fingerprints let's get his fingerprints because that comes directly from the taint of the arrest unless the government can establish the independent source and I think that's what the case law says and let's find a crime first let's find who did it here they have the person let's find a crime I think your honor that those cases dealt with and we have something in the first place that's not tainted I think part of the problem in this area of the law is there has been some confusion in the courts in talking about the idea you can never suppress the body you can never suppress identification evidence I think we're dealing with two different concepts having a person you don't suppress him and gathering evidence getting a motion of the arrest in order to bring a motion for exemplars that judge Redden would grant I can't either that's why I think I win except that your client continues to violate the law and you acknowledge we don't lose jurisdiction over the body but the practical effect is he can't be prosecuted for a crime he's continuing to commit if that's the law then there's something wrong with the law there's another reason to get there I think the court's conclusion that I think is supported by the record that this was a race-based arrest all assumptions were racial as judge Redden put it from the record it's hard to envision the arrest and treatment of the defendant had he been a non-Hispanic walking to and using a public telephone outside a large grocery store in the middle of the afternoon etc. I think when you when you have egregious constitutional violations and when you have egregious constitutional violations you have significant remedies and the remedy in this case is precisely that perhaps this man doesn't get prosecuted for illegal lawful permanent residency because he can never be prosecuted for illegal reentry well judge Redden recognized and of course this question is lurking and not yet mature but I suppose the question arises what happens if this case is addressed here of a separate matter of supervised release violation hearing for which there is a remedy of a potential couple of years in prison where let me ask this in terms of I take it that that means that the deportation proceeding can go forward this is our rule is that you don't suppress in a deportation or now it's called a removal proceeding unless it's egregious and race based but I just took that out of the hypothesis correct if you take it out of the process so if that's what we do he gets deported he's out of here he does not get a green card he's gone correct what was he prosecuted for criminally it wasn't for being here it was for having done illegal reentry correct he was not being prosecuted for you are here today he's prosecuted for how he got here for coming across the border without permission after deportation and commission he's prosecuted for a higher illegal act yes the element is and he is present right now today in the united states without the permission of the attorney general but the commission in fact was the entry across the border at a time in the past but the crime continues because of the fact that he does not now possess the permission of the attorney general that's correct that's being found he's clearly illegal committing crimes as he stays here but it's the same crime section 1326 there's only one criminal offense we're talking about as I recall he may have been charged with three which is standard under our government's indictment but that's not relevant to the discussion they're all title eight charges is it really your position that there is no way that they could pick him up and prosecute him for criminal crime I don't know that there's no way I think I can hypothesize a number of ways what I'm saying is from what I've heard from the government and I think the reason we're here instead of in trial on either the drug or the illegal reentry is they don't think there's another way they need a fingerprint exemplar because they have no other independent source as far as I know if they would we'd be in trial I'm sure Mr. Ortiz Hernandez who's been in custody a year and a half now would love to resolve this I think the problem is in this case different from Guzman Bruno and Parga Rosa where when encountered the defendant admitted his name or handed a card with his true name and gave the government independent source evidence that allowed them to go get trial evidence by way of fingerprints didn't happen here Mr. Ortiz Hernandez gave a different name they did not know who he was until they took him into custody and did an investigative fingerprinting process as Judge Redden found out who he was and said let's avoid the taint of the illegal search race-based or not by sidestepping it with the fingerprint what happens if he has a parole revocation hearing or supervised release violation he's put back in jail do they fingerprint people when they come into jail I assume they do bingo got him I'm sorry bingo you got him meaning that sounds like a you're arguing they can't use his fingerprints in the suppression all I'm arguing they cannot use the fingerprint they gathered investigatorily after his arrest the possibility that they may be back here or we may be back here in a year when the bureau of prisons fingerprints him and the I.N.S. refers him back you're overlooking one salient fact the government wants to use his fingerprints to establish identity in the supervised release revocation hearing your position is they can't because under judge redden's order they can't use any evidence of his fingerprints against him period because it was independent or otherwise that is your position is it not that will be brought forward and he denies they haven't brought forward and said we're going to trial with his I.N.S. file there's no photograph we're going to use and he hasn't excluded that it just hasn't risen yet it's not before us it's just the fingerprint exemplar and the fingerprint taken shortly after the illegal arrest just to follow make sure my my question was based upon a hypothesis they used to say the hypothesis being that we hold that there's no race based arrest but it was rather an arrest without probable cause if if that's so uh the fingerprints that should have that would be suppressed in the criminal trial can be introduced for the supervised release hearing can't they I assume so yes so the government can use them in the supervised release in the parole revocation hearing sure if the the fourth amendment doesn't apply and the court so rules no the fourth amendment does apply but it's not it's not race based it's merely lack of probable cause they say the exclusionary rule does not operate correct it's our argument that it's the race based point of the analysis that gets us into the supervised release violation but if you take away the race based part and you just turn into no probable cause and it's a garden variety fourth amendment violation then you can introduce them then you can revoke the parole then they can fingerprint him uh when he goes back to prison bingo independent source that's not where we are now but I'm trying to play this out what's going to happen to this guy well there I think you're right that we under that ruling we would go to a supervised release hearing without the exclusionary rule they would use the prints he would probably simply stipulate he'd be sentenced to time he would go off to the bureau of prison or if his time's already up he'd be sent to INS and then we would see if they would re-fingerprint say that was an independent source and come back to court to prosecute well but it it would go one step further wouldn't it because if we find that it is not race-based then the district court erred when it denied the government's motion for fingerprint exemplar no no I I disagree on that your honor I think there are two separate lines to get to the fingerprint exemplar you can you can make the argument and I think it's accurate to say that a race-based violation of the fourth amendment deserves this kind of application exclusionary rule but I believe directly under the line of Hayes and Davis and the notion that they have no independent source the taint of the illegal search absent race-based analysis the taint of the illegal search prevents them from gathering that evidence without showing some independent source to get there and I think what the cases hold is they don't know who he is their evidence of identity is suppressed they can't ask for that fingerprint evidence to prove it because it's tainted from the original stuff so I think using a independent source analysis or a race-based analysis you get the same result on the fingerprint so I think that's what I think makes up our case. Thank you Your Honor. Thank you very much. Thank you counsel. Mr. Poppeck ran over and we've saved a little time for you. Thank you Your Honor. The taint argument we've just heard from the defense has been explicitly rejected. In United States versus Cruz the Supreme Court held that the body of case law holding that the body can't be suppressed also means that the identifying characteristics of the body that are present in the courtroom cannot be suppressed. What happens if they shouldn't be there in the courtroom at all because the evidence used to even bring the trial or bring the indictment was the fruit of the poisonous tree. Cruz specifically applies the fruit of the poisonous tree analysis and holds that the identifying characteristics of the defendant present in the courtroom are independent. I've got the same problem which is to say my own ignorance. United States versus Cruz  I got it you're at page 41 and 42 of your brief. Okay. That's correct and importantly as interpreted by the Ninth Circuit in United States versus Humphreys 636 F. 2nd 1172 You finally got a case on the Supreme Court. Well the court there refers to Cruz and says a majority of the Supreme Court has held that the defendant's presence in the courtroom cannot be attacked as the fruit of an illegal arrest. And the context of that conversation was whether the defendant's presence in the courtroom could be attacked as the fruit of an illegal arrest. And the Supreme Court said And the Supreme Court  that the defendant's presence
judges: Reavley , W. Fletcher, Tallman